UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARBEN MUSTAFA,

                Plaintiff,

    -against-

HALKIN TOOL, LTD.,

                Defendant.
-----------------------------------------------------------------X
HALKIN TOOL, LTD.

    Third-Party Plaintiff,

    -against-

ELIOU STEEL FABRICATION, INC.,

    Third-Party Defendant.
-----------------------------------------------------------------X

CV-00-4851 (DGT)

**DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

       Defendant/Third Party Plaintiff, Halkin Tool Ltd. (HALKIN), in support of its motion for summary judgment submits the following statement of material facts, pursuant to Local Rule 56.1.

       References herein after each statement with a letter or letters followed by numbers are to deposition transcript pages as follows: "M"- Arben Mustafa; "A"- Dean Albrecht (HALKIN);"AS"- Andrew Scopelitis; "PE"- Peter Eliou; "AE"- Andonis (Anthony) Eliou; "FB" Frederick Bezler; "G"- Neal Growney.

1

## STATEMENT OF MATERIAL FACTS

1. In 1972 Mr. Mustafa began a 14 year period of employment as a machinist at a metal forming factory in Albania (M 25, 33).

2. At the factory in Albania Mr. Mustafa operated various metal working machinery, including lathes, milling machines and drilling machines (M 28, 31-32).

3. In Albania Mr. Mustafa became familiar with the hazards associated with machine operation, particularly the hazard of coming into contact with moving machinery or moving work pieces in the machinery (M37, 38, 40, 41, 42).

4. The general hazard Mr. Mustafa was aware of was not to put a hand into the area in a machine where the operation was taking place (M41).

5. The machinery Mr. Mustafa operated at the factory in Albania had decals containing written hazard warnings and hazard pictorials (M45- 46).

6. In 1986, Mr. Mustafa knew that he should keep any part of his body away from any part of a machine that might be moving (M46).

7. While working at the factory in Albania Mr. Mustafa knew that if he were going to put his hand into a machine for _any_ purpose, he would first have to make sure the machine was off before doing so (M50).

8. Eliou Steel Fabrication, Inc. (hereinafter ELIOU) was founded in 1970 by Peter Eliou (PE 66-67).

9. In 1971 ELIOU purchased a used press brake which was operated solely by a foot pedal (PE 71).

10. ELIOU fabricated metal gates, windows, doors and stairways (AE 20-21).

11. The old (used) press brake was used primarily by ELIOU to bend quarter inch thick steel for stairs (AE 30).

12. The bending process did not require the operator to put his hand very close to the "point of operation," at any time (AE 28-29).

13. In 1989 Peter Eliou met with a machinery salesman regarding ELIOU's decision to purchase a new press brake (PE 88-89).

14. The salesman had catalogs and showed Peter Eliou different machines (PE 90).

15. The salesman showed Peter Eliou papers which included an "Accurpress 725012" photograph and a document entitled "Optional" (PE 91 and Exhibit C to affidavit in support of motion).

16. The salesman went through the items listed in the "Optional" document with respect to the Accurpress 725012 and told Peter Eliou what each option was (PE 91, 93).

17. The 14 options listed on the "Optional" page include "Safety Light Curtain" (Exhibit C to affidavit in support of motion).

18. ELIOU decided to buy the Accurpress 725012 (PE 92).

19. The options ELIOU selected to be included with the press brake were: Power Operated Backgauge, Power Eccentric, High Speed Option and Tonnage Control (Exhibit B, Press Order; Exhibit C, Quotation # 904271; PE 94).

20. The controls for operating the press brake's ram are in a "Remote Operator's Control Station" (hereinafter the Control Station) (Exhibit C-Instruction Manual pD-1 and Exhibit E)

21. The Control Station controls include a "stop" button on top of the Control Station; a Hand/Foot Selector Switch (key operated); Dual Palm Buttons; and a 3-Position Foot Switch (Exhibit E, the photos in Exhibit D and described in Exhibit C p D-1 and D-2)..

22. The Control Station is movable (A75).

23. The Control Station is connected to the press brake by a cord (AE39).

24. The ability to move the control station a safe distance from the press brake is a design characteristic that provides safety when the "Foot" mode is used (A87-88).

25. The safety features built into the foot switch are the toe flap and kick plate (A140).

26. The design of the subject press brake complied with all standards applicable to it at the time of manufacture (affidavit of William B. Eaton, Exhibit G, p. 6, 13, 16).

27. HALKIN followed ANSI standards, in particular ANSI B-11.3, for the design of the press brake (A 63, 67).

28. Three warning decals, two triangular yellow and black pictorial and one rectangular, written, were placed on the front of the press brake at the time of manufacture (photos in Exhibit D, A 141-142).

29. The written warning states, among other things, as follows: "NEVER place any part of your body within the die Area." (Exhibit D photo).

30. ELIOU bought the Accurpress 725012 to manufacture stairs (AS 88).

31. Depending on the size of the metal to be bent, Anthony Eliou positioned the Control Station approximately one to three feet from the press (AE 46).

32. The piece of metal inserted into the bed of the press brake for bending did not have to be held in place by the operator's hands during the bending process (AE 46).

33. The bending process for concrete forms (pour stops) was the same as for stairs. There was no reason for the press operator to have his hands near the point of operation (AE 49-50).

34. After Mr. Mustafa was hired by ELIOU, Frederick Bezler showed him how to operate the Accurpress press brake (M 91-92).

35. Bezler trained Mr. Mustafa on how to work the press brake (FB 79).

36. On June 1 or June 2, 1998 Mr. Mustafa watched Frederick Bezler operate the Accurpress press brake (M 105, 107-118).

37. After watching Bezler operate the Accurpress press brake (hereinafter, the press brake), Mr. Mustafa understood how to do it (M92).

38. Bezler operated the press brake by using the foot switch (M123).

39. Mr. Mustafa operated the press brake using the foot switch (M124).

40. Bezler taught Mr. Mustafa to take his foot out of the pedal after each cycle (FB 133).

41. Pushing down the red (stop) button on the control station would (stop) the press and prevent the ram from coming down, even if the operator's foot was on the pedal (FB 194).

42. Bezler showed Mr. Mustafa the operation of the red (stop) button on the control station (FB 194).

43.  At ELIOU, after seeing the die (ram) came down, Mr. Mustafa knew that if his hand was in the point of operation, the ram could come down on his hand (M126).

44.  Mr. Mustafa knew from all of his previous experience that his hand should not be in the area where the die (ram) comes down (M 126).

45.  On June 2, 1998 Mr. Mustafa was aware of the hazard that happened to him the next day (M327).

46.  On June 1 or June 2, 1998, Mr. Mustafa knew that the Control Station could be moved (M131, 160).

47.  On June 1, or June 2, 1998 Mr. Mustafa bent 35 or 40 steps on the press brake (M 135).

48.  Each step started out flat and was bent three or four times (M 166-167)

49.  When Mr. Mustafa put his foot on the pedal, he watched the ram come down (M 179).

50.  On June 1, June 2 and June 3, 1998 Mr. Mustafa saw the ram descend over 150 times (M314-316).

51.  After each bend was done, Mr. Mustafa took his foot off and out of the pedal, as he saw Bezler do it (M 193; 319; 328).

52.  When Mr. Mustafa inserted the metal to be bent into the press brake he did not have to come close to the point of operation (M 197).

53.  No part of any task Mr. Mustafa was doing on the press brake at ELIOU required him to put his hands in the point of operation (M 197-198).

6

54. On June 1 or June 2, 1998 the key for the Hand/Foot selector switch was in the switch on the Control Station (M 198-199).

55. On the morning of June 3, 1998 there was a directive to bend metal for concrete pour stops (M 207).

56. Bezler bent two or three pour stop pieces while Mr. Mustafa watched (M219).

57. After each piece was bent, Bezler removed it and walked it over to where it was placed (M220).

58. On the first of concrete pour stop that Mr. Mustafa bent by himself, the accident occurred (M207).

59. During that bending process Mr. Mustafa used his right foot to make the ram descend bending the metal (M222).

60. Mr. Mustafa knew that if something unusual or unexpected happened, he was supposed to turn off the machine (M331).

61. The bent pour stop stuck to the ram as the ram was ascending (M 207, 222).

62. Mr. Mustafa became confused when he saw the pour stop stuck to the ram (M207, 223).

63. Mr. Mustafa put up his hands to remove the stuck pour stop from the ram, but the pour stop fell before he reached it (M225).

64. The pour stop fell into the machine, less than one foot behind the ram (M227).

65. Mr. Mustafa instinctively reached in after the pour stop (M 207-208, 228-229).

66. At that time Mr. Mustafa had his foot in the pedal housing (M229).

67. Plaintiffs expert, Neal Growney testified that Mr. Mustafa did not have to hold the piece of metal he was bending at the time of the accident and that if the Control Station were put several feet away from the machine Mr. Mustafa could not have been injured (whether he did anything inadvertently or not) (G112).

68. Mr. Growney testified that the Control Station could be placed a safe distance from the press brake and that doing so would provide a means of keeping the operator's hands out of the point of operation, if there were an inadvertent act of operation (G118).

69. Mr. Growney testified that since Mr. Mustafa did not have to hold the metal piece to be bent at the time of the accident, the Hand/Foot selector could have been set on the "Hand" mode (G118-119).

70. Mr. Growney testified that if Mr. Mustafa had removed his foot from the pedal after making the bend at the time of the accident he would not have been injured (G132).

71. Mr. Growney acknowledged that Mr. Mustafa was aware that if his hand was in the point of operation and the ram came down he could be injured (G131).

72. Mr. Growney acknowledged that at the time of the accident Mr. Mustafa instinctively put his hands into the point of operation (G70).

73. Mr. Growney testified that he had no objection to the triangular pictorial warning decals (G156).

74.     With respect to the written warning decal, Mr. Growney testified that the hazard requiring a warning is "having a part of your body caught in the point of operation" (G158).

75.     Mr. Growney testified that the applicable ANSI standard for the subject Accurpress 725012 is ANSI B11.3 1982 (G71-72, 88)

Dated:  New York, New York
        February 27, 2006

>                       HERZFELD & RUBIN, P.C.
>                       Attorneys for Defendant/Third Party Plaintiff
>                       Halkin Tool, Ltd
>
>                       By: _____
>                           Isaac Szpilzinger (IS-1844)
>                       40 Wall Street
>                       New York, New York 10005
>                       (212) 471-8500

Index No. CV-00-4851 (DGT)(JMA) Year 20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARBEN MUSTAFA,

    Plaintiff,

    -against-

HALKIN TOOL, LTD.,

    Defendant.

-------------------------------------------------------------------X

HALKIN TOOL, LTD.

    Third-Party Plaintiff,

    -against-

ELIOU STEEL FABRICATION, INC.,

    Third-Party Defendant.

## DEFENDANT'S RULE 56.1 STATEMENT OF MATERIAL FACTS

HERZFELD & RUBIN, P.C.
*Attorneys for* **Defendant/Third-Party Plaintiff Halkin Tool Ltd.**

*Office and Post Office Address, Telephone*
40 WALL STREET
NEW YORK, N.Y. 10005-2349
(212) 471-8500

To

Attorney(s) for

Service of a copy of the within      is hereby admitted.

Dated,

    Attorney(s) for

Sir:—Please take notice
☐ **NOTICE OF ENTRY**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on     20
☐ **NOTICE OF SETTLEMENT**
that an order
settlement to the HON.
of the within named court, at
on    20   at   M.
of which the within is a true copy will be presented for
one of the judges

Dated,

    Yours, etc.
HERZFELD & RUBIN, P.C.
*Attorneys for*

To

Attorney(s) for

*Office and Post Office Address, Telephone*
40 WALL STREET
NEW YORK, N.Y. 10005-2349