UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ARBEN MUSTAFA,

       Plaintiff,      CV-00-4851 (DGT)

 - against -

HALKIN TOOL, LTD.,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
HALKIN TOOL, LTD.,

       Third-Party Plaintiff,

 - against -

HALKIN TOOL, LTD.,

       Third-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW
OF DEFENDANT/THIRD-PARTY PLAINTIFF HALKIN TOOL, LTD.**

UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------- X
ARBEN MUSTAFA,

                      Plaintiff,                              CV-00-4851 (DGT)

  - against -

HALKIN TOOL, LTD.,

                      Defendant.

------------------------------------------- X
HALKIN TOOL, LTD.,

                      Third-Party Plaintiff,

  - against -

HALKIN TOOL, LTD.,

                      Third-Party Defendant.

------------------------------------------- X

## REPLY MEMORANDUM OF LAW
## OF DEFENDANT/THIRD-PARTY PLAINTIFF HALKIN TOOL, LTD.

### PRELIMINARY STATEMENT

Defendant/Third Party Plaintiff HALKIN TOOL, LTD. ("Halkin"), respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment and in response to the papers submitted in opposition by the plaintiff.

### ARGUMENT

In its moving papers, Halkin demonstrated that the Accurpress 725012 is a general press brake machine which has many different uses and applications determined by the ultimate user, in this case, plaintiff's employer, third-party defendant Eliou Steel Fabrication, Inc. ("Eliou"). Halkin demonstrated that the press brake machine was not defective and it complied with all applicable safety standards. Halkin further demonstrated that the product, as sold, was equipped with multiple safety features, any one of which, if used properly, would have prevented this accident: 1) the machine contained Dual Palm Buttons which require the operator to have both hands on the Palm Buttons to

operate the machine when the selector switch was in hand mode; 2) the Control Station, which governs the operation of the machine, can be moved to be placed at a safe distance from the point of operation; 3) the press brake contained a stop button on the Control Station which shuts off the machine in the event that the operator must reach inside the dies; and 4) in addition to the other features, Halkin offered an optional safety light curtain which would have prevented the dies from coming down if the operator's hands were in the point of operation. We also cited the leading New York case of Scarangella v. Thomas Built Buses, Inc., 93 N.Y.2d 655 (1999), which holds that where, as here, a manufacturer offers an optional safety feature, it cannot be liable for an alleged design defect where the purchaser of the product, Eliou, made the individual choice not to purchase that feature.

Halkin also demonstrated that the dangers of putting one's hands inside the machine, as plaintiff did, were open and obvious and no reasonable person would attempt to do so without first shutting off the machine. Indeed, plaintiff himself admitted in his sworn deposition testimony that he knew about the dangers of inserting his hands in the point of operation, but apparently ignored those dangers when he did so without first shutting off the machine. While plaintiff tries to rationalize his conduct as an inadvertent "instinctive" reaction, there was no exigent circumstance that required plaintiff to place his hand in the dies of the machine when he knew full well he was not supposed to do so without turning the machine off.

Halkin demonstrated that the warnings on the product were adequate, plaintiff was fully aware of the risks presented, and that no additional warnings would have mattered if plaintiff's description of how the accident happened, i.e., an inadvertent activation of the foot pedal, is believed.

Finally, Halkin demonstrated that the opinions offered by plaintiff's expert, Neil Growney, were not reliable or supported by proper evidentiary basis. Growney relied on ANSI standards that have no application to this case, ignored the ANSI standards that do, and relied on OSHA regulations that only apply to employers and not manufacturers. Consequently, the opinions

2

offered by Mr. Growney are not reliable and that he was predisposed in his opinions in disregard of the objective facts.

Plaintiff's opposition fails to put forth evidentiary proof in admissible form sufficient to defeat Halkin's showing. Plaintiff does not even address or attempt to controvert the Affidavit of Halkin's expert, William Eaton, which clearly established Halkin's entitlement to summary judgment. Instead, plaintiff ignores the relevant law and offers misplaced arguments in an attempt to conjure up an issue of fact. When plaintiff's submissions are analyzed, however, it is clear that plaintiff has no legitimate opposition to the motion.

The central thrust of plaintiff's opposition is that the press brake was allegedly defective because it did not have point of operation guards. As a basis for this conclusory opinion, plaintiff and his expert rely on various ANSI and OHSA regulations. This argument is premised upon an incorrect reading of the applicable regulations and is refuted by the express terms of the regulations as to who has that responsibility. This argument is factually and legally wrong, thereby undercutting the entire foundation for plaintiff's theory.

First, as set forth in the moving affidavit of Halkin's expert, the press brake is governed by ANSI B11.3-1982 (R1994), which permits the use of a foot control as long as it is protected from accidental activation. (Eaton Aff'd, p.6). There is no dispute that the press brake in question met that standard since it was housed in a protective casing to prevent such activation. In plaintiff's opposing papers, plaintiff has failed to distinguish, let alone discuss this section, thereby implicitly conceding that that ANSI standard governs herein. Indeed, even plaintiff's expert, Growney, conceded that ANSI B 11.3 was authoritative and that ANSI reflects industry practice. (Szpilzinger Aff'd ¶54-56).

As demonstrated in Halkin's moving papers, ANSI B 11.3-1982 (R 1994), specifies that the employer, after evaluating the machine and use, shall provide point of-operation safeguarding. (Eaton Aff'd pp. 7-8). Therefore, plaintiff's reliance on the ANSI standards simply do not support his argument that Halkin was responsible for guarding the machine.

3

Plaintiff's reliance on OHSA is equally ineffective, because OSHA guarding requirements only apply to **employers and <u>not</u> manufacturers**. (See Eaton Aff'd pp 7-8); See 29 C.F.R. §1910.217 (c) (i) (i). Under analogous circumstances, courts have uniformly recognized that OHSA only applies to employers and OSHA standards cannot be relied upon to impose guarding requirements on a manufacturer in a product liability action. See, e.g., Briney v. Sears Roebuck & Co., 782 F.2d 585 (6th Cir. 1986) ("However, since OSHA regulations only apply to employers and were not promulgated for consumer safety, they cannot be relied on here as evidence of negligent design"); McKinnon v. Skil Corp., 638 F.2d 270 (1st Cir. 1981)("OSHA was enacted to assure safety in the workplace and therefore its terms apply only to employers"); Yang v. Pollock Engineering Group, Inc., 2004 U.S. Dist. LEXIS 14378 (D.Minn. 2004), aff'd in part and rev'd in part, 428 F.3d 186 (8th Cir. 2005); Noskowiak v. Bobst SA, 2005 U.S. Dist LEXIS 19536 (E.D. Wis. 2005) (plaintiff's expert's reliance on OHSA was not reliable in products liability action against machine manufacturer since "OSHA standards apply to employers, not to manufacturers"); Byrne v. Liquid Ashalt Systems Inc., 238 F.Supp.2d 491 (E.D.N.Y. 2002)(excluding testimony that manufacturer violated OSHA because OSHA does not apply to manufacturers"); Rexrode v. American Laundry Press Co., 674 F.2d 826 (10th Cir. 1982), cert. denied, 459 U.S. 862 (1982) (holding that 29 CFR §1910.212 [the section relied on by the plaintiff concerning machine guarding] "imposes mandatory standards on employers and employees, and not the manufacturer."); Bazdar v. Koppers Company, 524 F.Supp. 1194 (N.D. Ohio 1981). [1]

Consequently, the requirement to select and use point-of-operation guards is imposed on Eliou, plaintiff's employer, and not Halkin. Indeed, the Accurpress 725012 press brake is a multi-purpose press brake which has many different uses and functions depending on the needs of the ultimate user. Here, Eliou used the machine to bend metal to manufacture stairs. The machine was

---

[1] For the same reasons, plaintiff's attempt to rely upon OSHA letters and review commission rulings, which relates solely to the <u>employer's</u> obligation, is misplaced.

4

equipped with both two hand Palm Controls and a foot control to satisfy the needs of the user if it was necessary for the operator to hold the metal and stabilize it while the ram was in operation. But, even in the foot pedal mode, there was no need for the operator to put his hands in the point of operation. Similarly, the Control Station could have been safely moved away from the foot petal to prevent accidental activation.

Since the regulations do not apply to Halkin and cannot be used as a basis to impose a duty to install point of operation guarding upon Halkin, there is no proper foundation for the opinions offered by plaintiff's expert and no evidence upon which plaintiff can legitimately rely to impose such an obligation upon Halkin. Without the necessary basis, plaintiff's expert's opinions amount to mere ipse dixit opinions and should be disregarded. See Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002); Weisgram v. Marley Co., 528 U.S. 440 (2000).

Plaintiff argues that ANSI standards are only "minimum standards," yet fails to present any applicable governmental standard which Halkin which has not met. Plaintiff's expert, Growney, has sidestepped the issue of which regulatory standards apply to the machine and who has the duty to install point of operation guarding in order to avoid admitting what is abundantly clear--that the press brake met all ANSI standards and the OSHA requirements of guarding do not apply to the manufacturer. In sum, the press brake was not defective when manufactured and sold by Halkin and met all appropriate governmental standards applicable to Halkin, the manufacturer.

Plaintiff's argument concerning the duty to install point of operation guarding is also refuted by the dictates of Scarangella and it progeny. As set forth in our moving Memorandum of Law, a manufacturer cannot be liable for selling a product without an optional safety feature when three factors are shown. (See Halkin's Brief, pp 15-16). Plaintiff does not dispute that two of the three Scarangella factors have been satisfied. Plaintiff only disputes the second Scarangella factor---i.e., whether there exists normal circumstances of use in which the product is not unreasonably dangerous without the optional equipment. Plaintiff has argued that the machine cannot be operated safely

5

without a barrier guard. However, this argument rests on a profoundly narrow reading of the Scarangella principles and ignores all the other undisputed features with which the product was equipped, -- each of which, if utilized properly, would have prevented this accident.

The Second Circuit in Campos v. Crown Equipment Corp., 2002 U.S. App. LEXIS 13243 (2d Cir. 2002), has rejected the argument made by plaintiff concerning the Scarangella second factor. In Campos, plaintiff brought a products liability action against a forklift manufacturer, alleging that the product was defective because it was not equipped with certain optional safety equipment. In opposition to the defendant's summary judgment motion, plaintiff argued that the second Scarangella factor was not met because the forklift was inherently dangerous without the optional safety equipment when operated among pedestrians. In rejecting this argument, the Second Circuit held:

> "Regarding the second factor, Campos argues that forklifts without the optional safety equipment are inherently dangerous when operated among pedestrians. Assuming, arguendo, the Campos is correct, he has not demonstrated that there are no normal circumstances in which forklifts without the optional the optional safety equipment can be operated safely because he has not addressed the normal use of forklifts in locations without pedestrians. So long as normal circumstances exist in which forklifts are operated in locations without pedestrians, and such operation without the optional safety equipment is not unreasonably dangerous, then Campos cannot overcome the second factor of Scarangella."

At bar, there is no doubt that the press brake could be operated safely without the point of operation guards urged by the plaintiff. Indeed, the machine as sold and delivered contained at least three separate safety devices designed and intended to prevent the subject accident. First, the Dual Palm Buttons, if used, would have prevented the accident because the operator's hands would have had to have been on the Palm Buttons to operate the machine, even inadvertently. Instead, Eliou operated the machine in the foot pedal mode. Second, the press brake contained a stop button on the Control Station which, had the plaintiff pressed, would have shut the machine off without the point-of-operation guards urged by plaintiff so that when he improperly put his hands into the dies, the machine could not have been activated. Third, the machine contained a Control Station which could have been

6

positioned a sufficient distance from the dies so that the plaintiff would not have been able to place his hand in the point of operation even if his foot was still on the foot pedal. Each one of these safety devices belies plaintiff's claim that the machine could not have been operated safely without the optional barriers offered by Halkin. In addition to the multiple safety features, the machine was clearly able to be safely operated by any properly trained person exercising reasonable care.

Therefore, plaintiff's claim that the machine was inherently dangerous without point of operation guards is wrong, and his attempt to distinguish Scarangella is unavailing. Accord, Cordani v. Thompson & Johnson Equipment Co., 16 A.D.3d 1002, 792 N.Y.S.2d 675 (3d Dept.), app. Denied, 5 N.Y.3d 704 (2005).

Plaintiff's argument that the machine was defective because the Palm Controls "were not mandatory and were easily bypassed by design," is also inapposite. (Plaintiff's Brief, pp. 13-14). Scarangella only requires that the product not be "unreasonably dangerous without the optional equipment", not that it be accident proof. In effect, plaintiff submits that when the press brake is operated in foot mode, the manufacturer is required to install the optional safety equipment. This position contravenes Scarangella, which acknowledged that it is the employer's duty not the manufacturer's, to determine the best utility of the product, based upon its own individual needs and anticipated uses. Since the safety feature plaintiff alleges was, in fact, offered and made available to Eliou as an option when it purchased the press brake, Halkin's duty has been satisfied under Scarangella and Eliou's choice not to purchase the available safety device cannot be Halkin's responsibility.

Plaintiff's reliance on Romero v. Cincinnati Incorporated, 171 F.3d 1091 (7th Cir. 1999), is also misplaced. First, in Romero, it is unclear from the record if the manufacturer had optional safety equipment, as here, available for installation on the machine, or, if that safety equipment was available generally in the marketplace. Most importantly, that case was governed by

7

Illinois law which apparently does not recognize the Scarangella doctrine absolving a manufacturer from liability where optional safety equipment is offered. Hence, Romero is inapposite.

Plaintiff's attempt to salvage his failure to warn claim is equally lacking. Plaintiff does not dispute that the plaintiff was an experienced machinist, and was familiar with the hazards associated with machine operation, particularly the hazard of placing his hands in the machine's point of operation. Nevertheless, plaintiff claims that Halkin is liable for failure to warn of foot pedal operation with an unguarded point of operation. (Plaintiff's Brief, p. 22). But, plaintiff has glossed over the key issues presented on this motion insofar as the failure to warn theory is presented 1) was the danger open and obvious; and 2) did the plaintiff understand the risks so that any lack of warning was not a proximate cause of his injury. Plaintiff's response on these points is simply insufficient to create an issue of fact.

In Clarke v. L R Systems, et al., 219 F.Supp.2d 323 (E.D.N.Y. 2002)(Trager, J.), this Court aptly dismissed plaintiff's failure to warn claim when plaintiff inserted his hands near the blades of a machine without turning off the power. This Court held that there was no duty to warn because plaintiff was aware of the danger of putting his hands in the machine without turning off the power. This is exactly the present case. Not only were the dangers open and obvious, but plaintiff, an experienced machinist, was admittedly aware of those dangers.

Plaintiff's warning claim is also flawed because no warning would protect against the manner in which the plaintiff claimed that the accident occurred- that he supposedly inserted his hands into the machine "because of instinctive reaction with little time to think." (Plaintiff's Brief, p. 23). In light of the position taken by the plaintiff, no additional warnings would have influenced his conduct, because he merely reacted instinctively. See Young v. Pollack Engineering Group, Inc., U.S. Dist. LEXIS 14378 (D.Minn. 2004), aff'd in part and rev'd in part, 428 F.3d 186 (8th Cir. 2005), (where the court recognized that an unanticipated activation of a product would not be affected by any warning

sought to be provided by the manufacturer and held that the manufacturer cannot be liable for a failure to warn in that type of situation).

The failure to warn claim, which is premised upon Growney's conclusory opinion, should also be dismissed because Growney is not a warning expert. Plaintiff has failed to establish that Growney has the requisite qualifications to render opinions as to the sufficiency of warnings and how they affect or not affect the user of the product. See also, Ortiz v. Stanley-Bostitch, Inc., 2000 U.S.Dist. LEXIS 6880 (S.D.N.Y. 5/17/00) (precluding Growney from opinion that warnings were inadequate and proximately caused accident because he lacked proper expertise and qualifications to opine on those issues).

Plaintiff's attempt to distinguish Marshall v. Sheldahl, 150 F.Supp.2d 400 (N.D.N.Y. 2001), is also without merit. Plaintiff argues that his "actions were reasonably foreseeable." How can it be reasonably foreseeable that the plaintiff, an experienced operator who understood the risks of placing his hands in the point of operation would nevertheless reach into the machine while his foot was still engaged on a foot pedal? In effect, plaintiff has argued that since some operators have been known to abuse or misuse a product, the manufacturer must design a fail-safe product with safety features to back up every other safety feature. There is no law or support for such an onerous standard, particularly where Halkin did make optional safety equipment available, which if was purchased by Eliou, would have prevented the harm from the unreasonable conduct exhibited by plaintiff.

Finally, plaintiff's defense of his expert, Growney, is not successful. Halkin has not contested Growney's qualifications. Rather, the thrust of its motion to strike his testimony is that there is no basis for his opinions that point of operation guards were required because ANSI, the industry standards, do not require them, and OSHA, only applies to manufacturers. (See discussion infra). Growney knows full well that OSHA does not apply to Halkin and that the ANSI standards have been met. By seeking to offer these opinions without any foundation, Growney's testimony is misleading, unreliable and should be precluded. See Barban v. Rheem Textile Systems, Inc., 2005 U.S. Dist.

9

LEXIS 5996 (E.D.N.Y. 2005), aff'd, 2005 U.S. App. LEXIS 23220 (2d Cir. 2005). Significantly, plaintiff has made no attempt to distinguish let alone discuss Barban. Accordingly, it is clear that Growney should be stricken since his testimony would be misleading and unreliable for the jury to consider. In sum, there is no adequate foundation for the naked, conclusory opinions presented by Growney.

## CONCLUSION

For all the forgoing reasons, it is respectfully submitted that Halkin's summary judgment motion should be granted.

Dated: New York, New York
       May 15, 2006

                                         HERZFELD & RUBIN, P.C.

                       By: _____
                              Michael B. Sena (0170)
                              Attorneys for Defendant/Third Party
                              Plaintiff, HALKIN TOOL, LTD
                              40 Wall Street
                              New York, New York 10005
                              Tel: (212) 471-8527