UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ARBEN MUSTAFA,

                Plaintiff,        **AFFIDAVIT OF SIMCHA**
                                                      **D. SCHONFELD**

    -against-

HALKIN TOOL, LTD.,
                Defendants.       Index No.: CV-004851
------------------------------------X  (DGT)
HALKIN TOOL, LTD.
        Third-Party Plaintiff

    -against-


ELIOU STEEL FABRICATION, INC.,
        Third-Party Defendant.
------------------------------------X

    Simcha D. Schonfeld, being duly sworn, deposes and says:

    1.  I am an associate of the law firm of Rheingold, Valet, Rheingold, Shkolnik & McCartney LLP, attorneys for the plaintiff in this action. I am fully familiar with the facts and circumstances of this action.

    2.  I submit this affidavit in Opposition to Defendant Halkin Tool, Ltd. ("Halkin")'s Motion for Summary Judgment.

    3.  Attached hereto as Exhibit A is plaintiff's Summons and Complaint dated June 28, 2000.

    4.  Attached hereto as Exhibit B is the Answer of defendant Halkin Tool.

    5.  Attached hereto as Exhibit C are excerpts of the deposition testimony of plaintiff Arben Mustafa dated March 7, 2002.

6. Attached hereto as Exhibit D are excerpts of the deposition testimony of plaintiff Arben Mustafa dated April 1, 2002.

7. Attached hereto as Exhibit E are excerpts of the deposition testimony of plaintiff Arben Mustafa dated July 26, 2002.

8. Attached hereto as Exhibit F is the report of plaintiff's expert Neal A. Growney, P.E.

9. Attached hereto as Exhibit G is the Affidavit of plaintiff's expert Neal A. Growney, P.E.

10. Attached hereto as Exhibit H are excerpts of the deposition testimony of plaintiff's expert Dr. Joel Grad.

11. Attached hereto as Exhibit I are excerpts of the deposition testimony of third party defendant's expert Dr. Martin A. Posner.

12. Attached hereto as Exhibit J are photographs of the subject machine.

13. Attached hereto as Exhibit K is the service manual for the subject machine.

14. Attached hereto as Exhibit L is a list of options features offered by Halkin for the subject machine.

15. Attached hereto as Exhibit M is the invoice reflecting the sale of the subject machine.

16. Attached hereto as Exhibit N are excerpts of the deposition of Colin Dean Albrecht.

17. Attached hereto as Exhibit O is a letter from the Chief of the Division of Occupational Safety Programming dated December 18, 1980.

18. Attached hereto as Exhibit P is a letter from the Deputy Director of Federal Compliance and State Programs dated May 26, 1981.

19. Attached hereto as Exhibit Q is a copy of ANSI B11.3-1982.

20. Attached hereto as Exhibit R is the decision of the Occupational Safety and Health Review Commission in the case of Central Steel & Tank Co.

21. Attached hereto as Exhibit S is the decision of the Occupational Safety and Health Review Commission in the case of Paccar Inc.

22. Attached hereto as Exhibit T are excerpts of the deposition testimony of plaintiff's expert Neal A. Growney, P.E.

## BACKGROUND

23. This is an action to recover for personal injuries suffered by plaintiff Arben Mustafa on June 3, 1998. As set forth in the complaint, plaintiff was then employed by Eliou Steel Fabrication Inc. ("Eliou") and sustained his injuries in the

course of that employment. While operating a brake press manufactured by defendant Halkin Tool Ltd. ("Halkin").

24. Plaintiff advanced claims grounded in negligence, strict products liability and breach of warranty, though plaintiff has since abandoned the breach of warranty claim.

25. As set forth in detail below and in the accompanying memorandum of law, plaintiff claims that the subject brake press is defective in design because it did not provide adequate safeguards to protect against the foreseeable risk of injuries to a user's hands while operating the machine through the use of the foot pedal.

26. Press brake machines are governed by 29 CFR 1910.212, which requires that the point-of-operation be guarded. No such guard was in place here and the machine at issue was non-compliant with that regulation.

27. The report of plaintiff's expert Neal Growney, P.E. discusses at length the fact that the risk of injuries such as those sustained by the plaintiff have been known in the industry for many years and advocates numerous alternative designs that were practical and reasonable at the time of the machine's manufacture.

28. Therefore, and for the reasons set forth below and in the accompanying memorandum of law, plaintiff respectfully

submits that Halkin's motion for summary judgment is without merit and should be denied.

## PROCEDURAL HISTORY

29. Plaintiff commenced an action against defendant Halkin Tool on June 28, 2000 bringing causes of action sounding in strict liability, breach of warranty and negligence (Exhibit A).

30. Defendant Halkin Tool filed its answer on August 18, 2000 (Exhibit B).

31. On October 18, 2000, Halkin Tool impleaded third party defendant Eliou, seeking indemnification or contribution for any judgment ultimately entered against it.

32. On or about December 20, 2000, Eliou filed its third party defendant answer.

33. Third party defendant Eliou filed a motion for summary judgment on August 1, 2003, on the grounds that it is immune from liability under the Worker's Compensation Law.

34. This Court denied the motion by order dated August 5, 2004.

35. Defendant Halkin Tool now moves for summary judgment and plaintiff makes this submission in opposition thereto.

## STATEMENT OF FACTS

36. Plaintiff was born in Tirana, Albania on June 29, 1956 and moved to the United States on October 21, 1996 (Exhibit C, at 7:10-16; 9:11). His familiarity with the English language is

minimal and he was aided by an interpreter during his depositions (Exhibit C, at 3:11).

37. Plaintiff commenced his employment with Eliou on June 1, 1998 when he was hired as a laborer to assist in the cutting and bending of metal sheets (Exhibit C, at 86:1-25).

38. On the morning of June 3, 1998, plaintiff was feeding metal sheets into a brake press machine manufactured by Halkin in order to bend the metal to make stairs (Exhibit D, at 202:2).

39. To operate the machine, a sheet of metal was placed inside the machine and a ram would come down on the sheet bending it and then immediately raise itself back up (Exhibit D, at 270:9-20).

40. While plaintiff was operating the machine, the ram came down and bent the metal but the metal stuck to the ram as it moved upward. Plaintiff used his hands to attempt to separate the metal sheet from the ram and was able to free the metal (Exhibit D, at 207:21-208:5).

41. As the metal was freed from the ram it fell behind the machine and plaintiff instinctively reached for the metal workpiece at which point the ram came down and crushed his hands (Exhibit D, at 208:6-8).

42. At the time of the accident, plaintiff was using the foot pedal to activate the machine. It appears that while reaching into the machine to secure the metal, he inadvertently

activated the foot pedal, which caused the ram to descend and crush his hands (Exhibit D at 236:5-12; Exhibit F at ¶ 7.30).

43. Plaintiff's left wrist has been fused, rendering it totally incapable of any movement whatsoever and nothing can be done to regain the use of that wrist (Exhibit H, at 66:22-24; Exhibit I, at 50:17).

44. Plaintiff spent more than a year in physical therapy but reported no improvement (Exhibit E, at 45:19-46:13)

### THE SUBJECT MACHINE

45. The brake press that is the subject of this litigation was manufactured by Accupress, a predecessor to Halkin, Model 725012, Serial Number 1710 ("the press brake") (see photos C-2 and D-2 attached hereto as Exhibit J).

46. The subject machine is a hydraulic powered brake press used to bend sheets of metal.

47. The area in the machine where the metal is bent is referred to as the point-of-operation. The point of operation consists of a ram that moves vertically. A sharp metal component called a punch is mounted to the ram and descends onto a second metal component called a die which is mounted in the brake press's bed (photograph F-20 at Exhibit J). The sheet of metal is placed between the punch and the die and is bent by the force of the ram.

48. The brake press can be activated by either a foot pedal or by hand controls called "palm buttons" (see photo D-7 at Exhibit J; Exhibit K).

49. If the hand controls are used, both buttons must be pressed simultaneously in order for the ram to descend (Exhibit F at ¶¶ 7.15, 7.22; Exhibit K at ¶ D(1)(vii)).

50. When the foot pedal is used, the ram is activated by the operator pressing on the pedal, which does not require the use of the operator's hands (Exhibit F at ¶ 7.6; Exhibit K at ¶ D(1)(viii)).

51. Halkin offered certain crucial safety features as options on the subject machine. Specifically, Halkin offered the option of a second foot pedal, which would have the effect of ensuring that the press would only function if both pedals were pressed and would decrease the chance of inadvertent activation (Exhibit K at ¶ 5).

52. Halkin also offered a "safety light curtain" as an optional feature (Exhibit K at ¶ 14). Halkin described the light curtain as follows: "This option is available where additional operator safety is required. In operation, beams of light are projected in front of hazardous areas. If a worker's hand breaks the 'curtain' a signal is sent instantly to the stop circuit of the machine" (Exhibit K at ¶ 14).

53. Eliou elected not to purchase the optional safety features (see Exhibit M).

**<u>PLAINTIFF'S EXPERT</u>**

54. Plaintiff submits the expert report of Neal A. Growney, P.E., an expert in the field of mechanical and industrial engineering. Mr. Growney has some forty years of experience in the engineering field and has testified as an expert witness in many cases over the past seven years. He has held many engineering positions over his illustrious career and is imminently qualified to testify regarding the issues in dispute in this case. Mr. Growney's curriculum vitae is attached to his report (see Exhibit F).

55. Plaintiff also submits the sworn affidavit of Mr. Growney that discusses his qualifications and the bases for his conclusions and incorporates his expert report by reference (see Exhibit G).

56. Mr. Growney has testified on behalf of plaintiffs as well as defendants, including parties represented by defense counsel Herzfeld & Rubin in other matters (Exhibit G at ¶ 9).

57. Mr. Growney inspected the subject machine on April 5, 2001 and on December 7, 2001 (Exhibit F at ¶¶ 2.1, 6.1).

58. Mr. Growney stated that without a barrier to prevent access to the point-of-operation, the area is freely accessible and users are likely to be injured if parts of their bodies are

9

within that area during operation of the machine (Exhibit F at ¶ 7.5).

59. The aforementioned risk is especially prevalent where the user is operating the machine by use of a foot pedal, which allows his hands and fingers to be in the point-of-operation while the ram is descending (Exhibit F at ¶ 7.6).

60. In the subject machine, the point-of-operation was entirely unguarded and nothing would have prevented a user from inadvertently placing his hands or arms in the point-of-operation while the foot pedal was depressed and the ram was descending. It is Mr. Growney's conclusion that this design renders the machine defective (Exhibit F at ¶ 7.10).

61. The dangers associated with inadvertent foot pedal actuation are well known in the industry. Attached as exhibit B-1, B-2 and B-3 to Mr. Growney's report are warnings from foot pedal manufacturers instructing that the pedals not be used in machines with an open and unprotected point-of-operation. Yet that is precisely how Halkin designed the subject machine.

62. Mr. Growney advocated numerous alternative designs that should have been implemented, including controls configurations, fixed and moveable barrier guards, pull backs and a light curtain (Exhibit F at ¶ 7.12).

63. <u>Fixed barrier guard</u> - This is a guard that would limit the size of point-of-operation to an opening only large enough to

feet a sheet of metal. It would prevent body parts from entering the point-of-operation (Exhibit F at ¶ 7.13).

64. <u>Moveable barrier guard</u> - This is a device that must be moved into position in order for the machine to operate. If an obstruction such as a hand or body part prevents it from being locked into position, the machine will not actuate (Exhibit F at ¶ 7.13).

65. <u>Restraints</u> - These are devices that allow the operator greater flexibility in the use of his hands but prevent the hands from entering the point-of-operation (Exhibit F at ¶ 7.13).

66. <u>Pull backs</u> - These restraints allow the user's hands to enter the point-of-operation when necessary but only when the ram is in the up position and there is no danger of injury (Exhibit F at ¶ 7.13).

67. <u>Light curtain</u> - This is an electronic beam of light that is positioned in front of the point-of-operation. If the user reaches towards to the point-of-operation and breaks the beam, the circuit is cut and the ram stops its descent (Exhibit F at ¶ 7.14; Exhibit K at ¶ 14). Patents and literature dating as far back as 1938 discuss light curtains and demonstrate their feasibility (Exhibit F at ¶ 7.14).

68. These alternative designs have been available for many years. In fact, Mr. Growney's report contains excerpts of a 1966

publication entitled Best's Safety-Maintenance Directory that discussed many of these options (Exhibit F at ¶ 7.13).

69. Mr. Growney also advocated a design that includes two-hand control actuation only (Exhibit F at ¶ 7.31-7.34).

70. Mr. Growney concluded that because the subject machine allowed for foot actuation without providing any safeguards to protect operators' body parts from being in the point-of-operation, the design of the machine was unreasonable dangerous and rendered it defective in design (Exhibit F at ¶ 7.25).

71. Mr. Growney concluded that had the subject machine been designed with any of the safety measures advocated in his report, plaintiff would not have been injured (Exhibit F at ¶ 7.35-7.37).

72. The risk of the harm suffered by the plaintiff was foreseeable to Halkin. OSHA has compiled a list of more than fifty press brake accident investigations from 1984 through 1990 (when the subject machine was built), the vast majority of which involved injuries similar to those suffered by the plaintiff (Exhibit F at ¶ 7.46).

73. Mr. Growney concluded that the design of the subject machine was in violation of § 212(a)(3)(ii) of 29 CFR 1910, which requires that machines whose operation exposes its users to injury must be properly guarded (Exhibit F at ¶ 7.45). Mr. Growney's opinion is consistent with the decisions of the

Occupational Safety and Health Review Commission attached hereto as Exhibits R and S.

74. Mr. Growney also concluded that the warnings on the subject machine were inadequate because they failed to warn of the dangers operators are exposed to in utilizing the press brake's foot pedal operating mode (Exhibit F at ¶ 8.9).

75. Since Halkin disputes all of these opinions in its motion papers, the questions of design defect, alternative design, failure to warn, proximate cause and negligence are all genuine issues of material fact for the jury to decide.

76. As covered in the accompanying Memorandum of Law, the report of plaintiff's expert and the testimony and evidence available in this case are sufficient to rebut Halkin's arguments and the instant motion should be denied.

**WHEREFORE,** it is respectfully requested that the motion for summary judgment of Defendant Halkin Tool Ltd. be denied in its entirety and that this Court grant such other and further relief as the Court deems just and proper.

Dated:   April 11, 2006
         New York, New York

_____
Simcha D. Schonfeld (SS4830)

Sworn to before me this
11th day of April, 2006

_____
NOTARY PUBLIC

13

TO:

Isaac Szpilzinger, Esq.
Herzfeld & Rubin, P.C.
Attorneys for Defendant
Halkin Tool, LTD.
40 Wall Street
New York, N.Y. 10005


Jeremy D. Platek, Esq.
O'Connor, Redd, Gollihue
& Sklarin, LLP
Attorneys for Third-Party
Defendant Eliou Steel Fabrication, Inc.
200 Mamaroneck Avenue
White Plains, N.Y. 10601