1

```
 1
 2            UNITED STATES DISTRICT COURT
 3            EASTERN DISTRICT OF NEW YORK
      x------------------------------------------x
 4    ARBEN MUSTAFA,
                              Plaintiff,
 5                                          Index No.
                -against-                   CV-00-4851
 6
 7    HALKIN TOOL, LTD.,
 8                              Defendant.
      x------------------------------------------x
 9    HALKIN TOOL, LTD.,
10                              Third-Party Plaintiff,
11              -against-
12
13    ELIOU STEEL FABRICATION, INC.,
14                              Third-Party Defendant.
      x------------------------------------------x
15                                  September 15, 2005
                                    10:07 A.M.
16
17              EXAMINATION BEFORE TRIAL of NEAL A.
18    GROWNEY, taken by Defendant, held at the offices of
19    Rheingold, Valet, Rheingold, Shkolnik & McCartney,
20    LLP, 113 East 37th Street, New York, New York,
21    before Barbara E. Bierman, a Notary Public for and
22    within the State of New York.
23
24
25
```

Advanced Reporting Service      (718) 225-8100

1                    Neal A. Growney
2      protection goes out the windows, it's not there.
3           Q.    So let me ask you about the proper
4      procedure where you have a situation involving a
5      control station that can be moved where the
6      selection was made to use the foot control, why the
7      operator would not be protected by simply having
8      the entire station moved a distance away from the
9      point of operation so that it would be impossible
10     for the operator to actuate the press while he was
11     anywhere near it?
12          A.    Oh, I'm sorry, sorry. Now I
13     comprehend the scenario, the hypothetical scenario.
14          Q.    I apologize.
15          A.    In other words, you are telling me was
16     that if you move the operator station say three or
17     four feet away from the press so the operator goes
18     and he puts his piece into the press brake and then
19     he walks back and steps on it.
20          Q.    Two or three feet, whatever the
21     distance is a safe distance.
22          A.    That is not a realistic production
23     scenario. There would be virtually nobody who is
24     producing bent metal parts on a press brake would
25     do that unless there some compelling physical

1         Neal A. Growney
2   reason in the piece.  If you are doing small
3   pieces, you are going to have to be right next to
4   it.
5         Q.    The question is could that be done and
6   would that not provide a manner of keeping the
7   operator's hands out of the point of operation if
8   there were inadvertent act of operation?
9         A.    My response is that falls into the
10  category, yes, anything could be done.  It's not a
11  realistic scenario.
12        Q.    And are you saying it's not a
13  realistic scenario because people just won't do it
14  in the workplace; is that based on your experience?
15        A.    Yes, people producing production parts
16  will not do that.
17        Q.    Since Mr. Mustafa did not have to have
18  his hands on the piece that he was working with at
19  that time of the accident, wouldn't it also have
20  been a selection made by the people who were in
21  control of this operator control station that he
22  should be using the two-hand control?
23        A.    They have the alternative of using
24  foot control or two-hands control.  There is
25  nothing that compels them to do two-hand control on

1         Neal A. Growney
2    similar back in Albania to here and that was
3    my objection.
4         Q.    So now I will ask you when I use the
5    word similar, I am talking about moving parts and
6    the dangerous associated with having any part of
7    your body be close enough to a moving part of
8    machinery; is that not something that Mr. Mustafa
9    was aware of?
10        A.    He was aware of dangers associated
11   with moving parts.  And once again my understanding
12   is that was in the context of rotating cutters.
13        MR. SZPILZINGER:  Off the record.
14             (Whereupon, a discussion was held off
15   the record.)
16        Q.    Would you agree with me that if
17   Mr. Mustafa had followed the workplace rule and
18   removed his foot from the pedal after making the
19   bend that he made, that he would not have been
20   injured here?
21        MR. MCCARTNEY:  Objection to the form.
22        A.    That most likely would have been the
23   case.
24        Q.    Is a fixed barrier guard a type of
25   guard that can be used on any operation on a press

```
                     Neal A. Growney
     Q.    What's the hazard?
     A.    The hazard is operating in a foot
pedal mode -- I'm sorry, one second. One second,
give me a little chance.
     Q.    Okay.  I am only trying to help.
Finish your answer.
     A.    The hazard is having a part of your
body caught in the point of operation.
     Q.    So let me ask you now with that
definition, never place any part of your body
within the die area, would that not cover having
any part of your body in there to be injured?
     A.    No.  Because that only covers
intentional placement of your body part in there.
It does not cover unintentional inadvertent
placement.  That's what we are warning about when
you are operating in the foot pedal mode or that's
what you should be warning about.
     Q.    Is the appreciation provided by a
warning dependant on whether you do something
intentionally or accidentally?
     A.    Well, that's a little complicated
answer.  By that, if you have the warning ahead of
time, well, then the people who have the authority
```

CERTIFICATE OF SERVICE

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF NEW YORK   )

    Troy Sockwell, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age, and resides in Jersey City, New Jersey.

    On April 11, 2006, deponent served the within **Affidavit of Simcha D. Schonfeld** upon the following individuals by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U. S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

    Jeremy D. Platek, Esq.
    O'CONNOR, REDD, GOLLIHUE & SKLARIN LLP
    Attorneys for Third-Party Defendant ELIOU
    200 Mamaroneck Avenue
    White Plains, New York 10601

and **via Hand Delivery** to:

    Isaac Spzilzinger, Esq.
    HERZFELD & RUBIN, P.C.
    Attorneys for Defendant/Third-Party
    Defendant HALKIN TOOL, INC.
    40 Wall Street
    New York, NY 10005

                                      _____
                                          Troy Sockwell

Sworn to before me this
11th day of April, 2006

_____
NOTARY PUBLIC

MARYBETH FENNELLY
Notary Public, State of New York
No. 01FE6130244
Qualified in Queens County
Commission Expires July 11, 20 09